UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ERNESTO MENDOZA CONTRERAS,
#68694-112,

        Petitioner,

v.                                    CIVIL ACTION NO. 2:25cv574

WARDEN,
Petersburg Low FCI,

        Respondent.

## REPORT AND RECOMMENDATION

Petitioner Ernesto Mendoza Contreras ("Petitioner" or "Contreras") brings this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that the Bureau of Prisons ("BOP") failed to apply time credits he earned towards transfer to a halfway house, or home confinement under the First Step Act ("FSA"). Pet. (ECF No. 1, at 9-13). He alleges the failure results solely from the presence of an immigration detainer, a BOP policy previously held unlawful by certain courts, including this one. Id. at 1. The Respondent filed a Motion to Dismiss the Petition, or Alternative Motion for Summary Judgment, (ECF No. 6), and the court provided the required notice to pro se plaintiffs under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), (ECF No. 8). Contreras filed a response, (ECF No. 9), to which Respondent replied, (ECF No. 12). For the reasons below, the undersigned recommends that the court GRANT Respondent's Alternative Motion for Summary Judgment, (ECF No. 6), and DENY the Petition, (ECF No. 1).

1

# I.    FACTUAL BACKGROUND

Contreras, a non-citizen, is currently serving a 156-month sentence at FCI Petersburg. His scheduled release date is August 26, 2026, with a supervised release term that requires his surrender to immigration officials for deportation on conclusion of his sentence. Pet. (ECF No. 1, at 2-3, 8). During his incarceration, Contreras earned credit towards early release for participating in programming directed at reducing recidivism, which was mandated by the FSA. Id. at 3. But Contreras's petition alleges the BOP has failed to apply his earned FSA credits to prerelease custody and adjust his release date—which he contends resulted from his being subject to an immigration detainer, rather than a final order of removal. Accordingly, he seeks an Order directing the BOP to apply all his FSA credits and adjust his release date. Id. at 4, 15-19.

Respondent filed a Motion to Dismiss the Petition, or Alternative Motion for Summary Judgment under Federal Rules of Civil Procedure 56, (ECF No. 6). The Government argues that Contreras failed to fully exhaust his administrative remedies prior to filing the Petition; that BOP has complied with the FSA; and that Contreras is not entitled to the relief he seeks as he is subject to a final order of removal, and statutorily prohibited from receiving the credit. Resp. to Pet. & Mem. L. Supp. Resp't's Mot. to Dismiss or Alternative Mot. Summ. J. ("Resp't's Mem.") (ECF No. 7, at 2, 6-10). Attached to Respondent's Memorandum is the Declaration of Paralegal Specialist Jonathan Benimana authenticating certain records from Contreras's immigration file. Decl. of Jonathan Benimana ("Benimana Decl.") ¶¶ 1-14 (ECF No. 7-1, at 1-3). The Benimana Declaration authenticates a detainer lodged against Contreras as a result of his being subject to a final order of removal. Id. Attach. 2, at 1 (ECF No. 7-1 at 10). It also includes a copy of the Final Order entered by the immigration judge. Id. Attach. 3 (ECF No. 7-1, at 15-16).

Petitioner opposed the Government's motion, first arguing that exhaustion should be excused because his administrative appeal would be futile. Reply to Gov't's Resp. & Mot. to Dismiss ("Pet'r's Reply") (ECF No. 9, at 15-19). He also contends that he is not subject to a final order of removal and that the Government has failed to demonstrate that the Final Order entered against him earlier had been "reinstated." Id. at 3-9. He argues that the exhibits produced fail to meet the "Respondent's heavy burden to show statutory ineligibility." Id. at 9.

After review, I conclude that undisputed facts confirm that Contreras is not entitled to the relief he seeks and, therefore, recommend the court grant Respondent's Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment[1] if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the Court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-25. When

---

[1] Respondent moved to dismiss the Petition under Rule 12(b)(1) and 12(b)(6) but also cited Rule 56(b) in the alternative. Both parties submitted declarations and additional evidence, all of which have been considered by the undersigned. This Report therefore recommends deciding this motion as a motion for summary judgment under Rule 56.

the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### III.    ANALYSIS

**A.    Contreras Has Not Properly Exhausted His Administrative Remedies, but the Court May Still Reach the Merits of His Petition.**

Ordinarily, federal prisoners must exhaust their administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). To satisfy this requirement, prisoners must comply with administrative procedures governing the review process. See Hrycuna v. Ormond, No. 2:18-cv-246, 2019 WL 1304250, at *4 (E.D. Va. Feb. 19, 2019), R. & R. adopted by, 2019 WL 1302592 (Mar. 21, 2019). "[E]xhaustion protects administrative agency authority" and "promotes efficiency." Woodford v. Ngo, 548 U.S. 81, 89 (2006) (first quoting and then citing McCarthy v. Madigan, 503 U.S. 140, 145 (1992)) (cleaned up).

Unlike with certain other civil actions, however, the exhaustion requirement in habeas actions under § 2241 is judicially imposed and non-jurisdictional. See Santiago-Lugo v. Warden,

4

785 F.3d 467, 471, 474 (11th Cir. 2015); see also Boumediene v. Bush, 553 U.S. 723, 793 (2008) (observing that although "there is no jurisdictional bar[,] . . . the question remains whether there are prudential barriers to habeas corpus review under these circumstances"). Thus, "a court may skip over the exhaustion issue if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." Thompson v. Wilson, No. 2:15-cv-148, 2015 WL 5682856, at *3 (E.D. Va. Sept. 25, 2015) (quoting Santiago–Lugo, 785 F.3d at 475); cf. Bacon v. Lee, 225 F.3d 470, 477 (4th Cir. 2000) ("Because we ultimately conclude that the assertedly defaulted claims are without merit, we will exercise our prerogative to decide [petitioner's] claims on the merits rather than on grounds of procedural default." (citing Royal v. Taylor, 188 F.3d 239, 247 (4th Cir. 1999)).

Contreras alleges that he attempted to exhaust his claims by filing a Form BP-8, which BOP staff returned with the notation "cannot be resolved at institution level." Pet'r's Reply (ECF No. 9, at 16). He contends this response demonstrates that there is no administrative remedy available, and further effort to exhaust would be futile. Id. at 16-18. Under BOP's Administrative Remedy Program, there is a four-tiered remedy process for an inmate to raise issues relating to any aspect of his confinement. See generally 28 C.F.R. § 542. First, an inmate should informally present concerns to staff in his unit team at the BOP facility (BP-8). See id. § 542.13. If an informal complaint does not resolve the stated concerns, the inmate must submit a formal complaint (BP-9) with the Warden within 20 days to pursue an administrative remedy. See id. § 542.14. When an inmate is not satisfied with the Warden's response, he may submit an appeal to the Regional Director through the appropriate form (BP-10). See id. § 542.15. If the inmate is still unsatisfied, he may file another appeal (BP-11) to General Counsel at BOP's Central Office in Washington, D.C. See id. Here, Petitioner filed only a BP-8, which was returned noting the

matter could not be resolved informally at the institution level. Petitioner argues this response effectively exhausted administrative remedies, as it demonstrated none were available. Pet'r's Reply (ECF No. 9, at 17). Respondent argues that Petitioner failed to fully exhaust his administrative remedies because he has not shown that they were unavailable. Resp't's Mem. (ECF No. 7, at 8-10). Based on the record submitted, it does not appear that Contreras submitted any appeal of his initial denial. He did not file a BP-10 or BP-11 to pursue additional administrative relief, and thus he has not fully exhausted all administrative remedies. Benimana Decl. ¶¶ 10-14, Attach. 5 (ECF No. 7-1, at 3, 21-24).

Nonetheless, there are several reasons to consider the merits of Contreras's Petition. Requiring exhaustion here would do little to advance the goals identified by the Supreme Court. The record is adequately developed, and the facts are simple and clear. As described below, resolution of Contreras's claim turns entirely on a legal determination of statutory language based on the undisputed facts surrounding his custody and previously authenticated immigration records. Cf. McCarthy v. Madigan, 503 U.S. 140, 145-46 (1992) (citing the value of exhaustion in cases presenting "a complex or technical factual context"), superseded by statute, Prison Litigation Reform Act of 1995, Pub. L. 104-134, 110 Stat. 1321. Demanding Contreras make another attempt at exhaustion is inefficient when his claim in this court clearly lacks merit. Lopez v. Ormond, No. 2:18-cv-322, 2019 WL 3365850, at *4 (E.D. Va. June 18, 2019); see also Thompson v. Wilson, No. 2:15-cv-148, 2015 WL 5682856, at *4 (E.D. Va. Sept. 25, 2015). Excusing exhaustion will not prejudice Respondent because, as detailed below, Contreras cannot show entitlement to relief under 28 U.S.C. § 2241.

**B.**  **The BOP Did Not Violate the FSA in Not Applying Contrera's FSA Time Credits Because Contreras is Subject to a Final Order of Removal.**

In enacting the FSA, Congress directed the Attorney General to develop a risk and needs assessment system for the BOP to use and determine recidivism risk and the type of EBRR programming appropriate for each inmate. 18 U.S.C. § 3632(a)(1)-(3). Under the FSA provision at issue here, 18 U.S.C. § 3632(d)(4)(C), earned FSA time credits, "shall be applied toward time in prerelease custody or supervised release." Id. § 3632(d)(4)(C). When an inmate earns sufficient FSA time credits, the BOP Director "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. (emphasis added). An "eligible prisoner" is one who:

> (A) has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment; [and]
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law.

Id. § 3624(g)(1)(A)-(C). For prerelease custody, an eligible prisoner is one who has "a minimum or low risk to recidivate;" and "has had a petition to be transferred to prerelease custody . . . approved by the warden," after the warden determined that "the prisoner would not be a danger to society if transferred," "the prisoner has made a good faith effort to lower their recidivism risk," and "the prisoner is unlikely to recidivate." Id. § 3624(g)(1)(D)(i). For supervised release, a prisoner is eligible when the prisoner has been determined "to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner." Id. § 3624(g)(1)(D)(ii).

In this case, Contreras's petition alleges that he earned FSA credits towards early release and that those credits had—at one time—earlier been reflected in his calendared release date. Pet.

7

(ECF No. 1, at 3, 8-9). He alleges that he was later "stripped" of those credits "based solely on 'Detainer with [D]eportation [O]rder.'" Pet'r's Reply (ECF No. 9, at 11). There is no dispute that Petitioner's credits have not yet been applied toward his transfer to prerelease custody—neither RRC nor home confinement. See id. But it is equally plain from the undisputed factual record that BOP's present calculation of the release date in Contreras's case is consistent with 18 U.S.C. § 3632, which expressly prescribes that inmates subject to "a final order of removal under any provision of the immigration laws" are not eligible to apply FSA credits. 18 U.S.C. § 3632(d)(4)(E)(i) (emphasis added). Implementing regulations repeat this restriction, providing that BOP "may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release" for any inmate "[s]ubject to a final order of removal." 28 C.F.R. § 523.44(a)(2).

Several federal courts, including this one, have enforced this statutory language as written and upheld the denial of FSA early release or transfer to prerelease custody to inmates subject to already finalized removal proceedings. See Bustos v. Andrews, No. 2:23-cv-488, 2024 WL 1328202, at * 2 (E.D. Va. Feb. 21, 2024), R. & R. adopted by, 2024 WL 1313219, at * 1 (E.D. Va. Mar. 27, 2024) ("Thus, Bustos is not eligible to apply earned time credits under the Act because he is subject to a final order of removal."); see also Ezeah v. Heckard, 5:23-HC-2246-M, 2024 WL 4535976, at *4-5 (E.D.N.C. Oct. 21, 2024); Flores v. Neely, No. 7:23-cv-429, 2023 WL 7034286, at *1 (N.D. Ala. Sept. 26, 2023), R. & R. adopted by, 2023 WL 7029212 (N.D. Ala. Oct. 25, 2023) (holding that petitioner was statutorily ineligible for earned time credits under the Act because she was subject to a final order of removal); Parker v. Barazza, No. 1:23-cv-455, 2023 WL 5401754, at *2 (M.D. Pa. Aug. 22, 2023) (denying a habeas petition "[b]ecause of [petitioner's] final order of removal, and pursuant to the plain language of 18 U.S.C. § 3632(d)(4)(E)").

In response to the Government's factual proffer, Petitioner argues that because his Order of Removal was entered under an earlier version of the immigration laws, it does not meet the "narrow" exception in the statute. Pet'r's Reply (ECF No. 9, at 20-21). But the exception is not as narrow as Petitioner contends. Congress specifically excluded from participation any immigrant whose removal had been finally determined under any provision of immigration law. Rubio v. Birkholz, No. 2:23-cv-9289, 2024 WL 3184897 at *1 (C.D. Cal. Apr. 30, 2024), R. & R. adopted by, 2024 WL 3183884 (C.D. Cal. June 26. 2024) (confirming the exclusion applied to non-citizens subject to pre-1997 orders, despite those orders' use of the earlier terms deportation and exclusion in place of removal). Petitioner has not submitted any sworn testimony of his own or other record of facts contradicting the Government's evidence and his argument is insufficient to create material dispute.

Petitioner also cites Goodman v. Ortiz, No. 20-7582, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020), for the proposition that BOP must apply FSA credits once eligibility criteria are met. Pet. (ECF No. 1, at 11). But Goodman involved a categorical exclusion from participation in the FSA allegedly due to its delayed implementation. In ordering BOP to apply FSA credit, the court did not even consider the statutes language barring application for inmates subject to final removal orders. Goodman, 2020 WL 5015613, at *6. To be sure, some courts, including this one, have ordered transfer to prerelease custody for non-citizen inmates, but those cases—like Goodman—did not involve inmates subject to a final order of removal. Rather the inmates were denied application of FSA credits solely on the basis of an immigration detainer. See Adepoju v. Scales, 782 F. Supp. 3d 306, 316 (E.D. Va. 2025) (finding inmates' reincarceration after release to home confinement based solely on immigration detainer violated the FSA); Popoola v. Scales, No. 3:25-cv-390, 2025 WL 3473370, at *14 (E.D. Va. Dec. 3, 2025) (same); see also Kuzmenko

9

v. Phillips, No. 2:25-cv-00663, 2025 WL 779743, at *6 (E.D. Cal. Mar. 10, 2025). Here, Contreras is subject to a final order of removal, and that final order is expressly referenced in the documentation BOP relied upon in calculating his release date. Petitioner's arguments do not contradict those facts, and application of his FSA credits is therefore expressly prohibited by the FSA's statutory language.

## IV.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends the court GRANT the Respondent's Motion for Summary Judgment, (ECF No. 6), and DISMISS the Petition with prejudice, (ECF No. 1).

## V.    REVIEW PROCEDURES

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

May 19, 2026

11

## Clerk's Mailing Certificate

A copy of the foregoing Report and Recommendation was mailed this date to:

**Ernesto Mendoza Contreras**
**68694-112**
**Petersburg Low FCI**
**P.O. Box 1000**
**Petersburg, VA 23804**

and an electronic copy was provided to:

**Sean Douglas Jansen**
**United States Attorney's Office - Norfolk**
**101 W Main St**
**Suite 8000**
**Norfolk, VA 23510**

Fernando Galindo, Clerk

By ___/s/ J. L. Meyers___
      Deputy Clerk

May 19
_____, 2026